UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JAMES COOK & DIANE COOK,**

     **Plaintiffs,**

vs.                         **Case No. 8:10-CV-02636-EAK-MAP**

**THE FIRST LIBERTY INSURANCE
CORPORATION,**

     **Defendant.**

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's, The First Liberty Insurance

Corporation, Motion for Summary Judgment (Doc. 22), Plaintiffs', James and Diane

Cook, response thereto (Doc. 23), and Defendant's reply (Doc. 26). For the reasons set

forth below, Defendant's Motion for Summary Judgment is **DENIED.**

### BACKGROUND AND PROCEDURAL HISTORY

The following facts taken from the Plaintiffs' Complaint (Doc. 2), Defendant's

Motion for Summary Judgment (Doc. 22), and Plaintiffs' Response to Defendant's

Motion for Summary Judgment (Doc. 23), are recognized by the Court only in regard to

resolution of the pending motion.

Plaintiffs filed this action alleging a breach of contract by Defendant for failing to

pay benefits provided by Plaintiffs' homeowners insurance policy. (Doc. 2). Defendant

issued a homeowners policy to the Plaintiffs for the policy period from October 6, 2007

to October 6, 2008, which included coverage for damage from sinkholes. (Doc. 22-1). On

1

or about September 5, 2008, Plaintiffs discovered damage to their home, including, but not limited to, progressive physical damage to the walls and floors of the residence. (Doc. 2). Upon such discovery, Plaintiffs made an application for insurance benefits pursuant to their homeowners policy. (Doc. 2).

Pursuant to Plaintiffs' request, Defendant retained QORE Property Sciences, Inc. ("QORE") to conduct a statutorily-compliant subsidence investigation. (Doc. 22). Upon completion of its investigation, QORE concluded that sinkhole activity was not a cause of damage to the Plaintiffs' residence. (Doc. 22). Based on QORE's results, Defendant determined the causes of loss were not covered by the Plaintiffs' homeowners policy and notified the Plaintiffs that it was unable to provide coverage. (Doc. 22). Defendant communicated this information to the Plaintiffs via letter sent on December 8, 2008. (Doc. 22-2). In the aforementioned letter, the final paragraph stated, "If you have any questions or have other information which we might use to reconsider our coverage decision, please call me." (Doc. 22-2).

Plaintiffs sought an additional opinion and retained N.S. Nettles & Associates, Inc. ("NSN"). (Doc. 22-5). NSN, in its report, dated October 30, 2009, stated that sinkhole conditions were present at the Plaintiffs' residence. (Doc. 22-5). On November 23, 2009, Plaintiffs filed this suit in State Court. (Doc. 2). The case was later removed to this Court. Defendant sought a neutral evaluation of the claim, an alternative procedure for resolution of disputed sinkhole insurance claims provided by Fla. Stat. § 627.7074. (Doc. 22). The neutral evaluator concluded that sinkhole activity could be eliminated as a cause of damage to the Plaintiffs' residence. (Doc. 22).

2

On August 24, 2011, Defendant filed a Motion for Summary Judgment. (Doc. 22). On September 7, 2011, Plaintiffs filed a Response to Defendant's Motion for Summary Judgment. (Doc. 23). On September 12, 2011, Defendant filed a Motion for Leave to File a Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment. (Doc. 24). The Court granted in part Defendant's motion and on September 19, 2011, Defendant filed a Reply in Support of Motion for Summary Judgment. (Doc. 26).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). This burden may be discharged if the moving party can show an absence of evidence to support the nonmoving party's case. *Id.* at 323, 325. If the moving party meets this burden, the nonmoving party must then designate specific facts demonstrating a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324.

A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. Material facts are those

that will affect the outcome of the trial under the governing law. *Id.* In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

## DISCUSSION

Defendant presents two grounds for summary judgment: (1) Defendant could not have been in breach as a matter of law; and (2) Plaintiffs are barred from recovery for failing to comply with the conditions of the policy. (Doc. 22).

In support for its first ground for summary judgment, Defendant claims that since it followed the statutory claims handling practices, it is cannot be in breach of contract as a matter of law. (Doc. 22). For sinkhole claims, the statutes require the insurer to engage a professional engineer to conduct testing to determine the presence or absence of sinkhole loss or other cause of damage within a reasonable professional probability. Fla. Stat. § 627.707(2), 627.7072 (2011). Defendant retained QORE and argues that the finding of QORE is presumed correct by law and must rely on its findings. (Doc. 22). Further, Defendant asserts that it should be afforded "immunity" for its reliance on the statute based on the presumption of correctness. (Doc. 22). As such, Defendant claims that Plaintiffs are barred from filing a breach of contract action. (Doc. 22).

Defendant fails to point to statutory authority and case law to support that it should be granted "immunity" for its reliance on QORE's results. Judge Merryday, in striking down a similar request, held that regardless of the precise type of presumption that Fla. Stat. § 727.7073(1)(c) creates, the presumption is an "evidentiary presumption and not a 'presumption' that can conclusively decide or foreclose the initiation of a suit." (*Surrett v. The First Liberty Ins. Co.*, Case No. 8:11-CV-00060-SDM-MAP, Doc. 36 (M.D. Fla. Sept. 2, 2011). Additionally, a recommendation of a neutral evaluator is not binding on any party and either party is permitted to file suit. Fla. Stat. § 627.7074(13) (2011). As such, it would be inconsistent to hold that the initial finding of the insurance company's hired engineer would prohibit an insured from suing.

As for its second ground for summary judgment, Defendant claims that Plaintiffs failed to comply with the "Your Duties After Loss" and the "Suit Against Us" provisions of their policy. (Doc. 22). Under "Your Duties After Loss," the insured must provide the insurer with records and documents and permit copying as often as the insurer reasonably requires. (Doc. 22). The "Suit Against Us" provision prohibits an action being brought against the insurer unless the policy provisions have been complied with. (Doc. 22). Upon denying the Plaintiffs' claim, the Defendant sent a letter stating no sinkhole activity was present and in the last paragraph of the letter stated, "If you have any questions or have other information which we might use to reconsider our coverage decision, please call me." (Doc. 22-2).

Defendant asserts that the aforementioned statement triggered the "Your Duties After Loss" provision of the policy. (Doc. 22). Further, Defendant claims that since the

Plaintiffs did not provide the report of their expert, which reached the opposite conclusion of QORE, Plaintiffs did not comply with their obligation to provide documents requested by Defendant. (Doc. 22). Since the Plaintiffs did not provide the Defendant with its document requests, Defendant argues Plaintiffs are barred from filing suit under the "Suit Against Us" provision. (Doc. 22).

Defendant's closing paragraph in its denial letter, "If you have any questions or have other information which we might use to reconsider our coverage decision, please call me," does not trigger the document demand requirement under the "Your Duties After Loss" provision. It is not reasonable to equate this polite, open-ended request with the specific demand for documents request under the "Your Duties After Loss" provision. As such, a pleasant valediction in a letter denying coverage does not put the insured on notice that the insurer is demanding records and documents.

Accordingly, it is:

**ORDERED** that Defendant The First Liberty Insurance Corporation's Motion for Summary Judgment (Doc. 22) be **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 21st day of November, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record